**Entered on Docket**
**November 07, 2014**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**IT IS SO ORDERED.**
**Signed November 7, 2014**

Arthur S. Weissbrodt
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>TINA HARWOOD,<br><br>              Debtor. | Case No. 11-50609-ASW<br>Chapter 13<br>Date: October 20, 2014<br>Time: 2:30 p.m. |

**MEMORANDUM DECISION GRANTING MOTION TO DISMISS**

    This matter comes before the Court on a Motion to Dismiss filed by the Chapter 13 Trustee (hereafter, "the Trustee"), who is represented by attorney Nanette Dumas. The Motion is opposed by Debtor Tina Harwood (hereafter, "the Debtor"), who is represented by attorney Saman Taherian. Having considered the parties' respective arguments and the applicable law, the Court grants the motion to dismiss.[1]

---

[1] Previously, this Memorandum Decision was issued in tentative form. The Court set a hearing for October 20, 2014, and gave the parties the opportunity to request oral argument on the tentative decision by October 10, 2014. No party requested oral argument, and the matter was taken off calendar and under submission.

## I. Background

The Debtor filed a chapter 13 bankruptcy petition on January 24, 2011. When the petition was filed, the Debtor's undersecured and general unsecured debts, as reflected in the schedules, totaled $556,962.67. There is no dispute that this amount of unsecured debt exceeded the statutory limit of $360,475.00 in effect on the petition date. Although the Debtor's lack of chapter 13 eligibility was obvious from the face of the schedules, neither the Trustee nor the Debtor's then-attorney spotted the problem.

On October 17, 2013, the Debtor's current attorney, Mr. Taherian, entered an appearance. Almost six months after Mr. Taherian's entry, and more than three years after the petition was filed, the Trustee filed a Motion to Dismiss on April 10, 2014, raising the chapter 13 eligibility issue for the first time. The Motion asserts, simply, that the Debtor is not eligible for relief under chapter 13 pursuant to 11 U.S.C. § 109(e) based on the Debtor's scheduled unsecured debts.

The Debtor filed an Opposition to the Motion to Dismiss on April 25, 2014. The Opposition asserts four arguments against dismissal. First, the Debtor contends that the Motion is moot because of the post-petition "forgiveness" of debt secured by a second deed of trust on the Debtor's residence. This first argument is not legally relevant. However, it is interesting, as discussed <u>infra</u>, because the Debtor later states that the debt was not forgiven and was instead "extinguished."

The Debtor's second argument against dismissal is that the debt listed in schedule F of the original schedules was erroneous and should only have been $238,981. The Debtor explains that the

original schedules were prepared by the Debtor's previous attorney, who incorrectly listed the full face value of notes which were secured by real properties in Florida,[2] failing to make a setoff for foreclosure sale proceeds.

The Debtor's third argument against dismissal is that the Trustee's motion is not timely and that the motion should be barred under the doctrine of laches. The Debtor argues that the Debtor will be prejudiced by dismissal at this late juncture, and states that the Debtor has been making payments to the Trustee for nearly three years. The Debtor also asserts that home prices have risen, and asserts that if the Debtor files a new chapter 13 case, the Debtor will be forced to pay a substantial dividend to unsecured creditors. Consequently, the Debtor contends that any plan proposed in a new chapter 13 case will be harder, if not impossible, to perform. The Debtor states that filing a new bankruptcy case will also result in additional costs and will have a negative effect on the Debtor's credit. The Debtor also asserts that the Debtor's current attorney will be prejudiced, because counsel has spent considerable time and effort addressing objections filed in the case and took no money up front.

The Debtor's fourth argument against dismissal is that the limits in § 109(e) are not jurisdictional.

The Trustee filed a Reply in support of the Motion on May 1, 2014. In the Reply, the Trustee agrees with the Debtor that the Court has jurisdiction over the case, notwithstanding the § 109(e)

---

[2] In a later-filed brief, the Debtor refers to property located in Arizona, not Florida, on which there was a foreclosure. The exact location of the property is unclear but is not important to this decision.

issue. Both parties have cited In re Wenberg, 94 B.R. 631 (B.A.P. 9th Cir. 1988), which stands for the non-controversial proposition that a bankruptcy court has jurisdiction to convert a case from chapter 13 to another chapter when there is a § 109(e) issue. At least one well-respected treatise has stated that eligibility under § 109(e) is not jurisdictional. See 2 Collier on Bankruptcy, ¶ 109.01[2] (16th ed. 2012). The Court agrees. Therefore, the Court treats the jurisdictional issue as conceded and resolved.

Nevertheless, the Trustee's Reply states that dismissal remains appropriate. Regarding the post-petition forgiveness of debt, the Trustee asserts that under In re Scovis, 249 F.3d 975 (9th Cir. 2001), this post-petition event does not change the eligibility analysis, because post-petition events are not considered when determining eligibility. Regarding errors in the original schedules, the Trustee states that even with corrections, the unsecured debts still totaled at least $422,325.31 on the petition date, which was over the limit for chapter 13 eligibility in effect when the petition was filed.

On the Debtor's argument of laches, the Trustee makes several counter-arguments. As a threshold matter, the Trustee argues that the doctrine of laches does not apply at all, because the Trustee is not asserting any personal rights against the Debtor. As for the issue of prejudice, the Trustee asserts that the Debtor has not been prejudiced by the delayed request for dismissal because the Debtor has had the protection of the automatic stay for more than three years without a confirmed plan. The Trustee acknowledges that the Trustee did not discover the lack of eligibility until very recently, and upon discovering this problem, the Trustee

believed that the Trustee lacked discretion to refrain from filing this motion to dismiss.[3] Also, the Trustee asserts that the Debtor's current counsel should have done due diligence before substituting into the case and should have discovered the lack of the Debtor's chapter 13 eligibility at that time.

A short hearing was held on May 6, 2014, on the initial motion papers. Prior to the hearing, the Court issued a Tentative Order which set out a briefing schedule to address the issue of laches in more depth. That Tentative Order also identified a case for the parties to address in supplemental briefing: General Lending Corp. v. Cancio, 505 B.R. 63 (S.D. Fla. 2014), aff'd, 2014 WL 4099739 (11th Cir. 2014) (applying laches to deny a creditor's motion challenging eligibility under § 109(e)). The parties opted for a different briefing schedule than the schedule proposed by the Court. Under the parties' agreement, the parties were permitted to file three sets of simultaneous briefs on June 16, July 15, and July 31, 2014.

Both sides filed briefs on June 16, 2014. The Debtor's brief acknowledges that the unsecured debts are above the eligibility limits, this time stating that the general unsecured claims in Schedule F should have totaled only $224,044.31. However, the Debtor asks for special treatment of the debt secured by the second

---

[3] This position is problematic. The Trustee has not offered any law to support the assertion that the Trustee lacked discretion not to seek dismissal, particularly on a non-jurisdictional issue. The Court very much doubts that the Trustee lacked such discretion, but the Court has found no dispositive authority on this issue. In other contexts, bankruptcy courts have discussed a trustee's "prosecutorial discretion" to seek dismissal, stating unequivocally that a trustee has the authority to decline to file a motion to dismiss. See, e.g. In re Ring, 341 B.R. 387, 390-91 (Bankr. D. Me. 2006); In re Duffus, 339 B.R. 746, 748 (Bankr. D. Or. 2006).

deed of trust, to eliminate this undersecured debt from the calculation. In direct contradiction to the Debtor's original response, the Debtor states that the loan was <u>not</u> forgiven but was instead <u>extinguished</u>, and argues that the Court should treat this as a nullification of the loan and treat the loan as though it never existed on the petition date. The Debtor has cited no law to support such treatment, nor any law which suggests that extinguishment of a loan is entitled to different treatment from the complete forgiveness of a loan. Either way, the extinguishment occurred post-petition.

On the issue of laches, the Debtor states that the Trustee filed three objections over the course of this bankruptcy case -- two in March 2011, and one in October 2013 -- without raising the eligibility issue. The Debtor asserts that the Trustee has offered no reason for the delay in raising this issue, and that such delay is inexcusable. Again, the Debtor argues that the Debtor has been prejudiced by the delay, adding that the Debtor has paid fees to two attorneys and estimating that conversion to chapter 11 would cost an additional $30,000 in fees.

The Trustee's brief filed on June 16, 2014, makes several new arguments. Although the Trustee acknowledges that the Trustee found no authority on point, the Trustee asserts that the doctrine of laches should not be applied to preclude an eligibility argument under § 109(e). In this regard, the Trustee contends that the decision in <u>General Lending Corp. v. Cancio</u> was wrongly decided, because in the Trustee's view, that decision creates an equitable exception to a bright-line statutory standard. The Trustee states that the "better view" is that chapter 13 eligibility can be raised

at any time prior to confirmation, noting that once a plan is confirmed, the eligibility issue can no longer be raised. The Trustee further states that a bankruptcy court has an independent duty to ensure that a plan meets all requirements for confirmation, and that eligibility for chapter 13 is "surely an applicable provision of the Bankruptcy Code" with which compliance is required prior to confirmation.

The Trustee also elaborates on the Trustee's earlier assertion that the doctrine of laches should not be applied to the Trustee, who is not asserting a "right or claim" against the Debtor. The Trustee characterizes her role as a "buffer" between debtors and creditors, and explains that the Trustee obtains no economic benefit from the dismissal of a case. The Trustee also cites to In re Castillo, 297 F.3d 940 (9th Cir. 2002), which stated that chapter 13 trustees sometimes act in a quasi-judicial capacity; therefore, the Trustee argues that chapter 13 trustees should not be treated as litigants with a personal interest.

Regarding the equities themselves, the Trustee concedes that the Trustee's failure to raise the eligibility issue earlier was the result of an oversight. On the issue of prejudice, the Trustee states that the Debtor now appears to be eligible -- due to the extinguishment of debt -- for relief under chapter 13 in a new case. The Trustee also argues that the Debtor's own conduct should be taken into account: i.e., the Debtor has proposed a zero percent plan and has benefitted from the automatic stay for more than three years without a confirmed plan. The Trustee also states that the Debtor's own attorney had an obligation to analyze the Debtor's eligibility for chapter 13 when the attorney took on the case.

With respect to the eligibility calculation, the Trustee raises little in the way of new argument. However, the Trustee has determined that the Debtor's unsecured debts as of the filing of the petition were over the eligibility limit.

On July 15, 2014, only the Trustee filed a brief. This brief does not raise any new issues, but addresses the Debtor's brief filed in June. The Trustee states that the Debtor has cited no law to support the application of laches against any chapter 13 trustee. The Trustee also contends that the Debtor's new argument that "extinguishment" of a debt should be deemed retroactive to the petition date is unsupported.

No further briefs were filed by either the Trustee or the Debtor after July 15, 2014.

**II. Analysis**

**A. The Trustee's Motion is Not Moot.**

Regarding the Debtor's first argument that the Motion became moot by the post-petition "forgiveness" or "extinguishment" of a loan, the Court disagrees with the Debtor. Under the plain language of 11 U.S.C. § 109(e), post-petition events are not considered in the eligibility determination. See 11 U.S.C. § 109(e) (a court looks at what a debtor "owes, on the date of the filing of the petition"); see also In re Scovis, 249 F.3d 975, 981-82 (9th Cir. 2001) ("We now simply and explicitly state the rule for determining Chapter 13 eligibility under § 109(e) to be that eligibility should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith."); In re Slack, 187 F.3d 1070, 1073 (9th

Cir. 1999) ("The language of the statute clearly states that the amount of the debt is determined as of **"the date of the filing of the petition."**) (emphasis in original). Whether characterized as "forgiveness" or "extinguishment," the loan existed on the petition date and counts in the eligibility analysis.

Although the Debtor has argued for special treatment of the "extinguishment" of a loan, the Debtor has cited no law to support such treatment. Rather, the definition of "extinguishment" in Black's Law Dictionary supports the loan's existence on the petition date, and makes no reference to an annulment. See Black's Law Dictionary (9th ed. 2009) (defining "extinguishment" as the "cessation or cancellation of some right or interest"). Although a cancellation could, in some instances, be treated as an annulment, a thing "ceases" when it discontinues or comes to an end. See Webster's Third New Int'l Dictionary 358 (1986). The cessation of a debt does not change history; it simply eliminates the obligation of repayment. However, now that the loan obligation no longer exists, the Debtor might be eligible for chapter 13 relief in a new case.[4]

**B. Even if the Errors in the Schedules were Corrected, the Unsecured Debt is Too High for Chapter 13.**

The Debtor's petition was filed on January 24, 2011. On that date, to be eligible for relief under chapter 13, the Debtor's

---

[4] According to the Trustee, the scheduled debts show that the Debtor's unsecured debt, inclusive of undersecured debt, is $422,325.31. This figure includes the $179,000 in "extinguished" debt. Presumably, in a new chapter 13 case, the scheduled unsecured debt would not include this $179,000 in debt, which means that there is a potential to bring the unsecured debt far below the current eligibility limit.
UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

unsecured debts could not exceed $360,475. That limit has since risen to $383,175, for petitions filed on or after April 1, 2013.

The Debtor's original Opposition to the Motion states that the total unsecured debt in Schedule F should have been only $238,981, and that the reported debt in Schedule F was too high because of a mistake made by prior counsel. If the Debtor is correct, then this unsecured debt, along with the $193,409 in undersecured debt from Schedule D, and the priority unsecured debt of $4,872 from Schedule E, would have totaled $437,262.00, which is still substantially in excess of the eligibility limit -- both the limit in effect on the date of the petition, and the limit in effect now. In the Debtor's latest brief, the Debtor has made a somewhat different calculation and has obtained a total of $383,421.27 in unsecured debt, but this also exceeds both limits. The Trustee calculates the unsecured debt at $422,325.31, based on the filed claims. Under any scenario, the Debtor's unsecured debts on the petition date were too high for chapter 13, regardless of any possible errors made by prior counsel in the original schedules.

**C. The Doctrine of Laches Does Not Bar the Trustee's Motion on the Record Before this Court.**

The main issue before the Court is one of first impression: whether a chapter 13 trustee can be precluded under the doctrine (or defense) of laches from arguing in favor of the dismissal of a bankruptcy case where a debtor is not eligible for relief under chapter 13, but where the trustee delayed in making the argument for several years. If so, then the Court must decide whether the Trustee's Motion, here, should be denied on grounds of laches.

Neither the Debtor nor the Trustee has offered law which is squarely on point. The Debtor has cited several cases which

address the law of laches, generally, but the Debtor has not cited a single case where a court ever prohibited a chapter 13 trustee from arguing a lack of chapter 13 eligibility prior to plan confirmation on laches or any other grounds. Indeed, the parties have cited no case -- and the Court has found no case -- in which the defense of laches has ever been applied to a chapter 13 trustee, or in which a court has held that laches should not be applied to a chapter 13 trustee.

"Laches is a defense in equity, has existed as such since the beginning of equity, and exists independently of statutes of limitation." 30A C.J.S. Equity § 138 (2014). As a general rule, the defense of laches is often not favored, particularly when the claim being asserted involves the public interest. Id.; see also California Coastal Com'n v. U.S. Dept. of the Navy, _ F. Supp. 2d _, 2014 WL 2212152, at *10 (S.D. Cal. May 28, 2014) ("The doctrine of laches is invoked sparingly in suits brought to vindicate the public interest."). The defense "derives from the maxim that a party who sleeps on his rights loses his rights." Save the Peaks Coalition v. U.S. Forest Service, 669 F.3d 1025, 1031 (9th Cir. 2012). The applicability of the defense depends on the facts and circumstances of each particular case. Id.

Factually, the closest case this Court has found to the case at bar is General Lending Corp. v. Cancio, 505 B.R. 63 (S.D. Fla. 2014).[5] Admittedly, General Lending Corp. is not on all fours and is not binding on this Court. In that case, the court applied the

---

[5] The Trustee contends that General Lending Corp. was not decided correctly. The Court does not need to address this contention, because, as discussed infra, the Court has concluded that the doctrine of laches does not preclude the Trustee's motion to dismiss in this particular case.

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

doctrine of laches to a creditor's motion challenging eligibility under § 109(e), not to a trustee's motion.  A creditor is, quite clearly, a debtor's adversary with a conflicting monetary interest, but the same cannot be said for a chapter 13 trustee.  This is a distinction to which the Trustee, here, ascribes importance.

The Trustee has urged the Court to conclude that the Trustee is not an adversary party asserting a personal right or claim, and therefore the Trustee may not ever be precluded under the doctrine of laches from seeking dismissal for lack of eligibility prior to confirmation.  In support of this argument, the Trustee has cited United States v. State of Washington, 157 F.3d 630, 649 (9th Cir. 1998) (quoting from Black's Law Dictionary 875 (6th ed. 1990)), which stated, loosely, that the doctrine of laches applies when three elements are satisfied: (1) a party fails to assert a right or claim in a timely manner; (2) the claim is against an adverse party; and (3) the delay causes prejudice to the adverse party. The Debtor has not addressed this argument by the Trustee, nor cited contrary authority.

The Court declines to read State of Washington as narrowly as the Trustee.  The court in State of Washington was not confronted with the question of whether the doctrine of laches could be applied to a chapter 13 trustee, whose role is unique.  Moreover, there are varying statements about the requirements of the laches defense which do not align, completely, with the State of Washington case.  See, e.g., Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 997 (9th Cir. 2006) (A defendant asserting a defense of laches must prove "(1) an unreasonable delay by plaintiff in bringing suit, and (2) prejudice to [defendant].").

Technically, a chapter 13 trustee who seeks to dismiss a bankruptcy case is not a party who asserts any personal "rights or claims" against a bankruptcy debtor. As the Trustee has pointed out, the Trustee has nothing to gain, personally, from the dismissal of this bankruptcy case. Rather, chapter 13 trustees are paid commissions for the monetary distributions which chapter 13 trustees make to creditors; it could thus be argued that chapter 13 trustees have a financial incentive for cases to remain open, so long as the debtors continue to make plan payments which the chapter 13 trustees then disburse. Nevertheless, chapter 13 trustees, like other parties, often move to dismiss debtors' cases for a host of reasons. When they do so, chapter 13 trustees take an adversarial stance to these debtors, much like a plaintiff would against a defendant. To say that a chapter 13 trustee is not a "party" in such circumstance cleaves too finely. In fact, as a "party in interest," chapter 13 trustees frequently move to dismiss cases under 11 U.S.C. § 1307(c). The Court therefore assumes, without deciding, that the doctrine of laches can apply to a chapter 13 trustee who has taken an adversarial stance to a debtor, even if such trustee has nothing personal to gain.

Nevertheless, the Court agrees with the Trustee that analysis of whether the defense of laches should apply includes consideration of what chapter 13 trustees are -- and do. Chapter 13 trustees are appointed at the discretion of the United States Trustee, who in turn works for the Department of Justice. See Castillo, 297 F.3d at 950; 28 U.S.C. § 586(b). Chapter 13 trustees are private trustees who operate their own for-profit businesses, but they operate under the supervision of the United States Trustee

"pursuant to legislative and judicial directives." Castillo, 297 F.3d at 950.

Chapter 13 trustees wear many hats and perform several functions, some of which were previously performed by bankruptcy judges; as a result, chapter 13 trustees -- like court staff -- enjoy quasi-judicial immunity for some of the tasks these trustees perform, such as calendaring tasks. Id. at 950-53. A chapter 13 trustee oversees chapter 13 bankruptcy cases and has a duty to assist debtors on non-legal matters. See 11 U.S.C. § 1302(b)(4). A chapter 13 trustee also has a statutory duty to investigate a debtor's financial affairs; arguably, this could include a duty to assess whether those affairs render a debtor ineligible for chapter 13, although the Bankruptcy Code does not expressly impose this specific duty. See 11 U.S.C. § 1302(b)(1); 11 U.S.C. § 704(a)(4). Chapter 13 trustees are permitted to file motions to dismiss, and often do so to protect creditors from prejudice caused by delay in confirming a plan.

It could be argued that a chapter 13 trustee's motion to dismiss based on a debtor's lack of eligibility is in service of the public interest -- although no authority to that effect has been offered by the parties. As a matter of statutory and public policy, only debtors who are eligible for relief under chapter 13 should be allowed to obtain relief under chapter 13. This Court has dismissed numerous chapter 13 cases where the debtors were ineligible for relief under chapter 13.

Regardless of whether the Trustee's motion is in service of the public interest, the doctrine of laches could apply. The unresolved questions are whether the Trustee unreasonably delayed

in raising the argument, and whether any unreasonable delay caused prejudice to the Debtor.

The Trustee, here, has not offered any explanation for the more than three-year delay in raising the eligibility issue. The Trustee has stated that the failure to raise this issue sooner was the result of an oversight. The Court has no reason to believe that the Trustee acted with any improper motive in neglecting this issue, but the record is clear that the Trustee did not evaluate the schedules at the commencement of the case to determine eligibility. On this record, the delay in moving to dismiss for lack of eligibility was unreasonable.

As for prejudice, the Debtor was, without a doubt, prejudiced by the delay in raising the eligibility issue. The Debtor spent more than three years proceeding forward with the assumption that the Debtor could obtain relief under chapter 13, expending attorney's fees toward that result. The Debtor's current attorney, Mr. Taherian, undertook the case (with no money up front) with the apparent belief that eligibility was not going to become an issue. The Debtor has asserted that filing a new chapter 13 case will bring substantial attendant costs, and that the Debtor might not be able to succeed in a new chapter 13 case. The Trustee has not rebutted these assertions.

However, this prejudice cannot be attributed solely to the Trustee. Significantly, the case has languished for several years while the Debtor has failed to confirm a plan in the face of multiple, ongoing objections. The Debtor commenced this case on January 24, 2011, and since then, there have been numerous objections to confirmation. On March 1, 2011, the Trustee filed a

6-point objection to confirmation. The Debtor immediately amended the plan, and the Trustee filed a 3-point objection on March 11, 2011. The Debtor then filed another amended plan, to which Creditor Mercedes-Benz objected. On May 2, 2011, the Trustee withdrew the Trustee's objections to the plan. Creditor Bank of New York Mellon then objected to the plan on September 26, 2011; that objection was resolved by stipulation. On September 27, 2013, the Trustee moved to dismiss this case because the Debtor had failed to make plan payments for eleven months. The Debtor's current attorney then entered the case on October 17, 2013, and the Debtor filed a Third Amended Plan a week later, in an apparent effort to cure the default. The Trustee then filed a 2-point, multi-part objection on October 30, 2013, and withdrew the motion to dismiss for non-payment. On November 5, 2013, Mercedes-Benz withdrew its objection, leaving the Trustee's objection as the sole objection standing in the way of confirmation. On November 7, 2013, the Trustee filed a 4-point, multi-part objection. The Bank of New York Mellon filed a new objection to confirmation on February 25, 2014. On April 9, 2014, the Trustee finally filed an objection raising the eligibility issue.

    Put simply, the Debtor has failed to propose a confirmable plan for more than three years, at no fault of the Trustee. All the while, the Debtor has had the benefit of the automatic stay, even while failing to make plan payments for almost a year. The case certainly could have been dismissed much sooner for lack of eligibility or other reasons, and the Debtor would have lost the stay. Alternatively, if the Debtor had resolved the objections

earlier, a plan might have been confirmed, and any argument against eligibility would have been foreclosed.

As discussed above, the Court is aware of the contentions of prejudice to the Debtor caused by the delay. There will be costs of conversion, or costs of pursuing a new petition, and potential costs associated with the changing value of real estate. However, the Debtor -- through staying current on her plan payments and through the diligence of counsel -- was in a position to avoid this prejudice.

Although it would have been far preferable for the Trustee to raise the eligibility issue sooner (or perhaps, in the Trustee's discretion, not at all, given the delay and non-jurisdictional nature of the argument), the Debtor's attorneys could have recognized the Debtor's lack of eligibility earlier. "The responsibility for protecting the integrity of the Chapter 13 program rests in the first instance with the debtor bar. Lawyers for individuals who file Chapter 13 cases must make responsible judgments in compliance with Fed. R. Bankr. P. 9011 to insure that the benefit of Chapter 13 is only enjoyed by persons who are eligible." In re Smith, 234 B.R. 852, 856 (Bankr. M.D. Ga. 1999). Understandably, this case was commenced by a different attorney than the Debtor's current counsel. Nevertheless, in taking on this case, the Debtor's current lawyer had an opportunity to assess the merits of the Debtor's petition, including the Debtor's eligibility, before agreeing to take on the case or in deciding how to pursue it.

Several courts have ruled that Fed. R. Bankr. P. 9011 imposes an obligation on debtors' attorneys to ensure a debtor is eligible

for chapter 13 relief before pursuing such relief, and such courts have sanctioned attorneys for filing petitions on behalf of ineligible debtors. See, e.g., In re Wegesend, 2014 WL 3051218, at *5 (Bankr. D. Hawaii July 3, 2014) (the debtors' attorney "should have known" that the debtors were not eligible); In re Kersner, 412 B.R. 733, 745 (Bankr. D. Md. 2009) (sanctioning attorney for filing a chapter 13 petition for an ineligible debtor); In re Pettey, 288 B.R. 14, 22-23 (Bankr. D. Mass. 2003) (attorney sanctioned for filing a chapter 13 petition on behalf of an ineligible debtor); In re Robertson, 105 B.R. 504, 509 (Bankr. D. Minn. 1989) (debtors' attorney "could have ascertained" that the debtors were not eligible for chapter 13 relief); see also In re Moix-McNutt, 220 B.R. 631, 637 (E.D. Ark. 1998) (sanctions appropriate under Rule 9011 when attorneys filed chapter 13 petition with knowledge that the debtors were not eligible). Here, the Court does not suggest that Rule 9011 sanctions would be appropriate against the Debtor's attorney, who did not file the original petition. However, these cases support the general notion that the duty to determine eligibility lies first and foremost with the debtor's own lawyer.

The Court is therefore faced with a record in which the Trustee and the Debtor's attorneys all missed the threshold issue -- an issue for which the Debtor bore primary responsibility. Under these circumstances, the Court will not bar the Trustee from pursuing dismissal based on the Debtor's lack of chapter 13 eligibility.

The Court does not need to decide the ancillary issue of whether the Court could confirm a chapter 13 plan with the knowledge that the debtor lacks chapter 13 eligibility. However,

the Court likely could raise the eligibility issue sua sponte, regardless of any laches issue. See Matter of Hammers, 988 F.2d 32, 34-35 (5th Cir. 1993) (bankruptcy court properly considered § 109(e) eligibility sua sponte); In re Wimmer, 512 B.R. 498, 512-13 (Bankr. S.D.N.Y. 2014) (same).

Based on the Debtor's original bankruptcy schedules, filed in good faith, the Debtor was not eligible for relief under chapter 13 when the petition was filed. It could be that under present eligibility limits and with any change in the Debtor's situation, the Debtor might be eligible for chapter 13 relief in a new case. Therefore, the Court will dismiss this case but will stay dismissal for 30 days to allow the Debtor the opportunity to decide whether to move to convert the case to another chapter or to file a new chapter 13 case. If the Debtor files a motion to convert the case before the 30 days expire, then the case will not be dismissed pursuant to this ruling on the Trustee's motion; if any such motion to convert is denied, then the Trustee may upload a dismissal order referring to this Memorandum Decision. If the Debtor opts to file a new case, the Debtor should file a motion to extend the automatic stay at the commencement of the new case and set the motion for a prompt hearing to avoid losing the stay in the new case.

**IT IS SO ORDERED.**

\*\*\* End of Memorandum Decision \*\*\*

Court Service List

Tina Harwood
7 Oakmore Drive
San Jose, CA 95127

Saman Taherian
The Fuller Law Firm, PC
60 N. Keeble Ave.
San Jose, CA 95126

** The Chapter 13 Trustee to be served by ECF